IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL NIX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:18-cv-01244-KOB |
| ) | |
| LOWE'S HOME CENTERS, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

This matter comes before the court on a motion for summary judgment filed by Defendant Lowe's Home Centers, LLC. (Doc. 24). Lowe's seeks summary judgment on Plaintiff Michael Nix's complaint alleging employment discrimination based on race and age under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. § 1981; and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* Mr. Nix, who is African American and over the age of 40, alleges that Lowe's impermissibly terminated him because of his race and age. Because Mr. Nix cannot make a *prima facie* showing of discrimination or show pretext regarding Lowe's decision to terminate him, the court will grant Lowe's motion for summary judgment.

### I.    FACTUAL BACKGROUND

Mr. Nix is a 63-year-old African American man. Mr. Nix worked for Lowe's beginning in 2001 and, in March of 2017, became the assistant store manager in the Service Department at a Lowe's store in Northport, Alabama. In his position, Mr. Nix did not supervise cashiers. From the time he began working at Lowe's, Mr. Nix did not receive any write-ups or disciplinary actions.

1

In September 2017, Lowe's terminated Mr. Nix, purportedly based on his role in filling out and submitting fraudulent customer surveys in violation of company policy. Mr. Nix maintains that he did nothing wrong. Lowe's asserts that it had a good faith belief that Mr. Nix was involved in customer survey fraud and explained the discovery of fraudulent survey submissions.

When a customer makes a purchase at Lowe's, his receipt contains information about how he can submit a customer-service survey. Lowe's makes each receipt and resulting survey individually identifiable so that Lowe's can best use the data. Lowe's also receives the IP address of the computer on which the customer submits the survey and the time of submission. The Lowe's Corporate Office uses the survey results to assess Lowe's stores, and the survey results can impact the bonuses of assistant store managers—the position held by Mr. Nix prior to his termination. Fraudulent submission of a survey by a Lowe's employee can result in termination.

On September 12, 2017, Lowe's Loss Prevention Department noticed two suspicious surveys; the surveys raised suspicion because they were for different customers but were submitted almost simultaneously from the same IP address. The Loss Prevention Department began an investigation into the suspicious surveys.

The Loss Prevention Department found surveillance footage of one of the purchases that generated one of the receipts tied to the suspicious surveys. The surveillance footage showed a customer making a purchase without taking his receipt. The cashier picked up the receipt and held onto it. Later, the cashier interacted with Mr. Nix multiple times while at a computer terminal in the Lowe's. The video suggested that the employee was inputting the fraudulent receipt while interacting with Mr. Nix.

The Loss Prevention Department alerted Lowe's management. A Human Resources Manager, Kathy Seifried, and a District Manager, Aaron Epperly, interviewed Mr. Nix about the suspicious customer surveys. During the interview and without having seen the video, Mr. Nix denied interacting with any cashiers in his job. Mr. Epperly, with the support of Ms. Seifried, decided to terminate Mr. Nix from his employment at Lowe's purportedly because, based on the video and Mr. Nix's conflicting denial of talking to the cashier, they believed that Mr. Nix had impermissibly submitted fraudulent customer surveys.

Lowe's replaced Mr. Nix with a white female, Kayla Whittingham, who was under 40. Neither Mr. Epperly nor Ms. Seifried had a role in choosing Mr. Nix's replacement.

After his termination, Mr. Nix exhausted his administrative remedies and filed the complaint in this case, alleging that Lowe's terminated him based on his race and age because the white managers wanted to create a position for a white female under the age of 40. (Doc. 1). He alleged that he was terminated based on pretext for discrimination under Title VII, § 1981, and the ADEA. Following discovery, Lowe's filed a motion for summary judgment on all of Mr. Nix's claims.

## II.   STANDARD OF REVIEW

Summary judgment allows a trial court to decide cases that present no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: whether any genuine issues of material fact exist, and, if not, whether the moving party is entitled to judgment as a matter of law. *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). But, inferences can create genuine issues of material fact. *Carlson v. FedEx Ground Package Systems, Inc.*, 787 F.3d 1313, 1318 (11th Cir. 2015).

In response, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial.*'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added).

The court must "view the evidence presented through the prism of the substantive evidentiary burden" to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254. The

court must refrain from weighing the evidence and making credibility determinations because these decisions belong to a jury. *See id.* at 255.

Further, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

### III. ANALYSIS

In its motion for summary judgment, Lowe's argues that no genuine issues of material fact exist regarding Mr. Nix's discrimination claims because he cannot make a *prima facie* showing of discrimination and cannot show pretext for his termination. (Doc. 24). More specifically, Lowe's argues that Mr. Nix cannot show that Lowe's treated a similarly situated comparator outside of his protected class more favorably than it treated him and cannot show that he was terminated for any reason other than a good faith belief that he submitted fraudulent customer surveys against Lowe's company policy. (Doc. 25). Lowe's also argues that, to the extent that Mr. Nix seeks to make a hostile-work-environment claim, such a claim has no merit.

In response, Mr. Nix focuses largely on the applicable legal framework, articulating at length the summary judgment standard and operation of employment discrimination law. (Doc. 31). He goes on to argue that Lowe's has no proof that he actually violated any work-place rules—only suspicions. He asserts that a reasonable jury could find discrimination because he was replaced by a younger white female.

5

In reply, Lowe's argues that Mr. Nix fails to meet the evidentiary burden for any of his claims and fails to create any genuine issues of material fact. Lowe's focuses on the fact that Mr. Nix's arguments do not fill in the fatal holes in his case.

### a. Title VII and § 1981 claims

Title VII prohibits an employer from discriminating against a person because of his race. 42 U.S.C. § 2000e–2(a)(1). Similarly, § 1981 provides that "[a]ll persons" have the same right to make and enforce contracts as white citizens, which, in an employment context, protects against employment discrimination based on race and color. 42 U.S.C. § 1981(a); *see also Standard v. A.B.E.L. Servs. Inc.,* 161 F.3d 1318, 1330–34 (11th Cir. 1998). Claims under Title VII and § 1981 claims have the same elements, so courts analyze the claims under the same framework. *See Standard,* 161 F.3d at 1330.

Where a plaintiff lacks direct evidence of discrimination and must rely on circumstantial evidence to prove his allegations of discrimination, the court applies the *McDonnell Douglas* burden-shifting framework, through which the plaintiff can create an inference of discrimination by making a *prima facie* showing. *Springer v. Convergys Customer Mgmt. Grp. Inc.,* 509 F.3d 1344, 1347 (11th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)). Under the *McDonnell Douglas* framework, the plaintiff must begin by making a *prima facie* showing of discrimination, which consists of the following: (1) the plaintiff was a member of a protected class; (2) he was qualified to do the job; (3) he was subjected to an adverse employment action; and (4) he was treated less favorably than similarly situated individuals outside his protected class. *Holland v. Gee,* 677 F.3d 1047, 1055 (11th Cir. 2012). A similarly situated individual in this context is called a comparator. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326 (11th Cir. 2011).

Here, Mr. Nix does not argue that he has direct evidence of discrimination. In fact, Mr. Nix admitted in deposition testimony that he had no reason to think that he had been discriminated against other than being terminated with no bad employment history and replaced by a younger white female. (Doc. 26-1 at 22–23). So, the *McDonnell Douglas* framework applies in this case.

Here, even reading all facts and inferences in his favor, Mr. Nix cannot make a *prima facie* showing of discrimination based on his race. *See Graham*, 193 F.3d at 1282. A plaintiff asserting employment discrimination on the basis of race must show disparate treatment of a comparator "similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1224 (11th Cir. 2019) (*en banc*). In this case, Mr. Nix does not proffer any similarly situated comparator, much less show that Lowe's treated the comparator more favorably. Mr. Nix does not proffer evidence of any Lowe's employees outside of his protected class who were thought to submit fraudulent surveys but were treated differently[1]; nor does he point to any other assistant managers outside of his protected class who received disparate treatment. The only employee that Mr. Nix focuses on is his white replacement Ms. Whittingham; but Ms. Whittingham was not an assistant manager and Mr. Nix appears to make no effort to show that she was similarly situated to him in all material respects. *See id.* Because Mr. Nix does not identify a comparator and cannot meet the necessary element of showing that he was treated less favorably than similarly situated individuals outside his protected class, he cannot make a *prima facie* showing of discrimination. *Holland,* 677 F.3d at 1055.

Moreover, Lowe's *does* address whether Mr. Nix was treated differently than other similarly situated employees and refutes any possible *prima facie* showing. Both Mr. Epperly,

---

[1] The court notes that Mr. Nix does not mention the fate of the cashier who allegedly also engaged in the fraudulent submission of customer surveys along with Mr. Nix.

the decision-maker in this case, and Ms. Seifried, who works in Human Resources, stated that the decision to terminate Mr. Nix based on the suspicion that he had submitted fraudulent customer surveys was consistent with decisions made by Lowe's in similar situations. (Doc. 26-2 at ¶ 15; doc. 26-3 at ¶ 18). Further, Mr. Epperly stated that, between July and September 2017, Lowe's discharged three white managers, two of whom were over 40, for the same reason that Lowe's terminated Mr. Nix—they were all believed to be involved in submitting fraudulent customer service surveys. (Doc. 26-3 at ¶ 20). Lowe's evidentiary submissions show that similarly situated managerial employees outside of Mr. Nix's protected class received the same treatment as Mr. Nix, and Mr. Nix does not contest that evidence. So, Mr. Nix has not established a genuine issue of material fact regarding his inability to make a *prima facie* case of discrimination. *See* Fed. R. Civ. P. 56.

In other circumstances, Mr. Nix could potentially survive summary judgment even without establishing a *prima facie* case of discrimination under *McDonnell Douglas*. "[E]stablishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Lewis v. City of Union city, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Lockheed-Martin Corp.*, 644 F.3d at 1328). A plaintiff can survive summary judgment where the evidence, viewed in the light most favorable to the plaintiff, presents a triable issue of fact by showing a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Lockheed-Martin Corp.*, 644 F.3d at 1328 (quotation omitted). Here, the evidence does not make that showing.

Mr. Nix himself stated in deposition testimony that he had no reason to believe that he was discriminated against except that he was terminated without prior employment infractions

and was replaced by a younger white female. (Doc. 26-1 at 22–23, 29). He stated that he had no reason to believe that Mr. Epperly, the decision maker for his termination, or Ms. Seifried had ever discriminated against him. (*Id.* at 18). He said that he did not know of other African Americans who Lowe's had terminated and did not feel like Lowe's discriminated against other African Americans. (*Id.* at 22–23). Mr. Nix even said that he "guess[ed]" that he understood why someone viewing the security footage in this case would think he was involved in the fraudulent submission of customer surveys, and he guessed that submitting fraudulent surveys constituted a terminable offense. (*Id.* at 22, 27). Ms. Seifried and Mr. Epperly confirmed that submitting fraudulent customer surveys constitutes a fraudulent offense and stated that white managers had been fired for the same conduct. (Doc. 26-2 at 13–15; doc. 25-3 at 18–20).

That factual background does not create a convincing mosaic of circumstantial evidence indicating discrimination. *See Lockheed-Martin Corp.*, 644 F.3d at 1328. Based on the evidence before the court, no reasonable jury could infer from the evidence that Lowe's terminated Mr. Nix based on discriminatory reasoning related to his race, as opposed to the belief that he engaged in fraudulent behavior. So, even outside of the *McDonnell Douglas* framework, no genuine issues of material fact exist regarding Mr. Nix's Title VII and § 1981 claims and Lowe's has shown entitlement to summary judgment on those claims. *See* Fed. R. Civ. P. 56.

   **b. ADEA claim**

The ADEA prohibits employers from firing employees who are forty years or older because of their age. 29 U.S.C. § 623(a)(1); *Sims v. MVM, Inc.,* 704 F.3d 1327, 1331–32 (11th Cir. 2013). To succeed on a claim under the ADEA, an employee must establish that his age was the "but-for" cause of the adverse employment action. *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 176 (2009). This showing can be made through either direct or circumstantial evidence.

*Mora,* 597 F.3d at 1204. When a plaintiff relies on circumstantial evidence of discrimination, the court applies the *McDonnell Douglas* burden-shifting framework. *Sims,* 704 F.3d at 1332.

Again, Mr. Nix does not rely on direct evidence of discrimination in this case. So, the *McDonnell Douglas* framework applies. *See id.* To make a *prima facie* showing of discrimination under the ADEA as required by *McDonnell Douglas*, the plaintiff must show: (1) he was a member of the protected group over the age of 40; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the position from which he was discharged; and (4) he was qualified to do the job from which he was discharged. *Kragor v. Takeda Pharm. Am., Inc.,* 702 F.3d 1304, 1308 (11th Cir. 2012).

Unlike for his Title VII and § 1981 claims, Mr. Nix can possibly make a *prima facie* showing of discrimination under the ADEA. Mr. Nix's allegations and the evidence show that Mr. Nix is in his sixties, was subject to an adverse employment action when he was terminated, and was replaced by a much younger person, as his replacement was under 40. (Doc. 31-1 at ¶ 6). Lowe's argues that, because Mr. Nix was involved in the fraudulent submission of customer surveys, he was no longer qualified for his job as assistant manager. But, Lowe's does not otherwise contest his qualification for his position. Mr. Nix asserts that he did not fraudulently submit surveys and did nothing wrong. (Doc. 31-1 at 5). So, some question exists regarding whether Mr. Nix was qualified for his job and, therefore, could make a *prima facie* case of discrimination. However, that question becomes merely academic because Mr. Nix cannot succeed under the rest of the *McDonnell Douglas* framework.

After an employee has established a *prima facie* case of ADEA discrimination under the *McDonnell Douglas* framework, "the burden shifts to the employer to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for the adverse

employment action." *Kragor,* 702 F.3d at 1308. If the employer proffers a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the employer's reason is a pretext. *Id.*

In this case, Lowe's proffers a legitimate, non-discriminatory reason for Mr. Nix's termination: the good faith belief that he fraudulently submitted customer surveys. So, the burden shifts to Mr. Nix to show pretext. To assess pretext, a court must "determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997) (citation omitted). Such evidence must demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (quotation omitted). A plaintiff may not establish pretext simply by questioning the wisdom of the employer's reason for an adverse action. *Id.* at 1543.

Based on the evidence submitted, no reasonable jury could find that Lowe's termination of Mr. Nix based on suspicions of his submitting fraudulent customer surveys was a pretext to fire him based on his age in violation of the ADEA. Mr. Nix's main argument for pretext is that he was terminated without a bad employment record and replaced with a younger female. However, neither Ms. Seifried nor Mr. Epperly, who made the decision to terminate Mr. Nix, had any role in hiring his replacement. (Doc. 26-2 at ¶ 18; Doc. 26-3 at ¶ 22). The disconnect between Mr. Nix's termination and the selection of his replacement indicates a lack of causation than undermines his pretext argument.

Further, Mr. Nix's argument about a lack of previous disciplinary infractions fails to show pretext. Both Mr. Epperly and Ms. Seifried stated that submitting fraudulent surveys was a terminable offense, and even Mr. Nix said he guessed it was a terminable offense. (Doc. 26-2 at ¶¶ 14–15; doc. 26-3 at ¶ 19; doc. 26-1 at 22). So, the decision to fire him without previous disciplinary actions on his record represents part of a company policy. Thus, Mr. Nix's contention that Lowe's should not have fired him based on one offense when he had an otherwise clean disciplinary record goes more to the issue of the wisdom of his termination than its potential for discrimination, and the lack of prior discipline alone does not show pretext. *See Combs,* 106 F.3d at 1543.

Moreover, Mr. Nix points to no other "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Lowe's proffered legitimate reason for terminating him. *See id.* Nothing in the record calls into question the fact that Lowe's terminated Mr. Nix because of a good faith belief that he submitted fraudulent consumer surveys. Lowe's Loss Prevention Department flagged two suspicious customer surveys and video evidence showed Mr. Nix going outside of his job role and talking multiple times to a cashier who appeared to be inputting one of the fraudulent surveys. (Doc. 26-2; doc. 26-3). When he was interviewed by Mr. Epperly and Ms. Seifried, Mr. Nix denied talking to the cashier, in direct contravention to the video evidence, which called his credibility into question. (Doc. 26-2 at ¶¶ 10–12; doc. 26-3 at ¶¶ 13–15). Mr. Epperly, with Ms. Seifried's support, then terminated Mr. Nix based on a belief that Mr. Nix had been involved in fraudulently submitted customer surveys, a terminable offense; further, Lowe's had fired other employees for the same sort of conduct. (Doc. 26-2 at ¶¶ 13–15; doc. 26-3 at ¶¶ 16–20). In deposition testimony, even Mr. Nix admitted that he could see why someone would

think from the video that he was involved in submitting the fraudulent survey.  (Doc. 26-1 at 27). All of that evidence shows a good faith belief that Mr. Nix committed a terminable offense.

The weight of the record evidence of a non-discriminatory reason for terminating Mr. Nix means that, even viewing the evidence and its related inferences in the light most favorable to him, Mr. Nix cannot "cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct."  *See Graham*, 193 F.3d at 1282; *Combs,* 106 F.3d at 1538.  For the same reasons, Mr. Nix also cannot show a convincing mosaic of circumstantial evidence that could allow him to escape summary judgment on his ADEA claim. *See Lockheed-Martin Corp.*, 644 F.3d at 1328.  Accordingly, the court finds that Mr. Nix has not established any genuine issues of material fact to allow him to overcome Lowe's motion for summary judgment on his ADEA claim.  *See* Fed. R. Civ. P. 56.

### c. Potential Claim for Hostile Work Environment

As a final note, Lowe's argues, out of an abundance of caution, that Mr. Nix cannot succeed on a claim alleging a hostile work environment.  (Doc. 25).  While Mr. Nix passingly invoked the term "hostile work environment" in his deposition testimony, the court finds that Mr. Nix does not allege a hostile work environment, as he does not raise that issue in his complaint or in his response to Lowe's motion for summary judgment.  (Doc. 1; doc. doc. 31).  So, the court will not address the merits of an unpled hostile-work-environment claim and that putative claim cannot help Mr. Nix survive Lowe's motion for summary judgment.

### IV. CONCLUSION

In this case, the court finds no genuine issues of material fact regarding Mr. Nix's claims of discrimination based on his race and age.  So, the court GRANTS Lowe's motion for

summary judgment. The court DISMISSES Mr. Nix's complaint and ENTERS SUMMARY JUDGMENT in favor of Lowe's.

      **DONE** and **ORDERED** this 30th day of July, 2020.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE